NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4241
_____

MARY ANN SIVOLELLA, for the use and benefit of the
EQ/Common Stock Index Portfolio, the EQ/Equity Growth
PLUS Portfolio, the EQ/Equity 500 Index Portfolio,
the EQ/Large Cap Value PLUS Portfolio, the EQ/Global
Multi-Sector Equity Portfolio, the EQ/Mid Cap Value PLUS Portfolio,
the EQ/GAMCO Small Company Value, and the EQ/Intermediate
Government Bond Index Portfolio

v.

AXA EQUITABLE LIFE INSURANCE COMPANY and
AXA EQUITABLE FUNDS MANAGEMENT GROUP, LLC

(D.N.J. No. 3-11-cv-04194)


GLENN D. SANFORD, for the use and benefit of the
EQ/Large Cap Value PLUS Portfolio, the EQ/Global
Multi-Sector Equity Portfolio, the EQ/T. Rowe Price Growth
Stock Portfolio and the EQ/GAMCO Small Company Value Portfolio;
WILLIAM R. TUCKER, for the use and benefit of the EQ/GAMCO
Small Company Value Portfolio and the EQ/T. Rowe Price Growth Portfolio;
BRIAN A. SANCHEZ, for the use and benefit of the EQ/Global Multi-Sector
Equity Portfolio and the EQ/PIMCO Ultra Short Bond Portfolio;
MARY T. CUSACK, for the use and benefit of the EQ/Large Cap Value
PLUS Portfolio, the EQ/Core Bond Index Portfolio and the EQ/Mid Cap
Value PLUS Portfolio; ROBERT CUSACK, for the use and benefit of the
EQ/Large Cap Value PLUS Portfolio, the EQ/Core Bond Index Portfolio
and the EQ/Mid Cap Value PLUS Portfolio; PATRICIA F. LYNN, for the
use and benefit of the EQ/Global Bond PLUS Portfolio, the EQ/Mid Cap
Value PLUS Portfolio, the EQ/GAMCO Small Company Value Portfolio
and the EQ/PIMCO Ultra Short Bond Portfolio

v.

AXA EQUITABLE FUNDS MANAGEMENT GROUP, LLC

(D.N.J. No. 3-13-cv-00312)

Mary Ann Sivolella, Glenn D. Sanford, Brian Sanchez, Mary Cusack,
Patricia Lynn and William Tucker, on behalf of the EQ/Core Bond Index Fund,
the EQ/GAMCO Small Company Value Fund, the EQ/Global Bond Plus Fund,
the EQ/Global Multi-Sector Equity Fund, the EQ/Intermediate Government Bond
Index Fund, the EQ/Equity 500 Index Fund, the EQ/Common Stock Index Fund,
the EQ/Equity Growth PLUS Fund, the EQ/Large Cap Value PLUS Fund, the EQ/Mid
Cap Value PLUS Fund, the EQ/T. Rowe Price Growth Stock Fund, and the EQ/PIMCO
Ultra Short Bond Fund,

Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-11-cv-4194 and No. 3-13-cv-312)
District Judge: Hon. Peter G. Sheridan

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 17, 2018

Before: AMBRO, RESTREPO, FUENTES, *Circuit Judges*

(Filed July 10, 2018)

_____

OPINION[**]

_____

FUENTES, *Circuit Judge*.

---

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

The Petitioners appeal the District Court's dismissal of their claim with prejudice following a 25-day bench trial. For the following reasons, we will affirm.

## I.

Because we write primarily for the parties, we discuss only those facts necessary to our decision.

The Petitioners are parties to variable annuity contracts[1] with Defendant AXA Equitable Life Insurance Company ("AXA"). They opted to allocate certain annuity contributions to mutual funds[2] ("Funds") offered by AXA. Each of the Funds is a part of the EQ Advisors Trust ("EQAT"), a Delaware statutory trust comprised of numerous mutual funds. One of AXA's wholly owned subsidiaries, Defendant AXA Equitable Funds Management Group, LLC ("FMG"), served as the investment manager and administrator for the Funds. To facilitate that arrangement, EQAT and FMG negotiated Investment Management Agreements and Mutual Funds Service Agreements, which laid out FMG's management and fund administration fees. The fees differed for all of the Funds and were set forth as percentages of each of the Fund's assets. FMG also contracted with a sub-administrator and various sub-advisers to assist it in performing its duties for the Funds.

---

[1] As the District Court explained, "[a] variable annuity is a contract between an individual or entity and an insurance company, which allows [Petitioners], as contract-holders, to convert gains from an investment into annuity payments over some period of time. Under these contracts, contract-holders contribute money and then allocate these monetary contributions to one or more investment options offered within the variable annuity." J.A. at 11-12 (internal citations omitted); J.A. at 187.

[2] "A mutual fund is a pool of assets, consisting primarily of a portfolio of securities, and belonging to the individual investors holding shares in the fund." *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 338 (2010) (internal quotations and alterations omitted).

3

The Petitioners filed this case as a derivative action on behalf of the Funds.[3] Specifically, the Petitioners argued that FMG had breached its fiduciary duty under § 36(b) of the Investment Company Act because the investment management and fund administration fees it collected were excessive given the proportion of its responsibilities it delegated to its sub-administrator and its sub-advisers. The District Court held a 25-day bench trial, at which the Petitioners presented ten witnesses, including four experts. The Defendants called six witnesses, including three experts.

Both sides called Steven M. Joenk as a fact witness. Joenk is the President and Chief Executive Officer of FMG, and he also serves as Chairman of EQAT's Board of Trustees ("Board"). In assessing Joenk's credibility, the District Court explained that "[h]is testimony was credible and substantive. However . . . because of his position at FMG, his answers may be biased or skewed."[4] The District Court also explained that it did not find any of the Petitioners' four expert witnesses to be credible but that it did find the Defendants' experts to be credible. The District Court further noted that the testimony of defense witness Gary S. Schpero, the Lead Independent Trustee of the Board, was "generally consistent, thorough, and accurate."[5]

Ultimately, the District Court decided in favor of the Defendants and issued a 146-page opinion concluding that the Petitioners had failed to meet their burden of proof. The Petitioners moved for reconsideration of the District Court's decision, but the District Court

---

[3] Although the Petitioners initially sued on behalf of twelve mutual funds, they have only pursued this appeal on behalf of four of them.
[4] J.A. at 24.
[5] *Id.* at 33.

4

denied the motion, explaining that, "in essence, the request [wa]s that [it] vacate [its] opinion and rewrite it with a different conclusion."[6] This appeal followed.[7]

Section 36(b) of the Investment Company Act ("Act") "impose[s] upon investment advisers a 'fiduciary duty' with respect to compensation received from a mutual fund, 15 U.S.C. § 80a–35(b), and grant[s] individual investors a private right of action for breach of that duty."[8] In its seminal case on § 36(b), *Jones v. Harris Assocs. L.P.*, the Supreme Court, relied upon *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,[9] a Second Circuit decision, in articulating the standard for assessing whether an investment adviser has breached its fiduciary duty. It explained that "to face liability under § 36(b), an investment adviser must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining."[10] Plaintiffs bear the burden to prove a breach of a fiduciary duty.[11]

In order to determine whether a breach of a fiduciary duty has occurred, we consider the so-called *Gartenberg* factors:

> (1) the nature and quality of the services provided to the fund and shareholders; (2) the profitability of the fund to the adviser; (3) any "fall-out financial benefits," those collateral benefits that accrue to the adviser because of its relationship with the mutual fund; (4) the economies of scale achieved by the mutual fund and whether such savings are passed on to the shareholders; (5) the comparative fee structure (meaning a comparison of the fees with those paid by similar funds); and (6) the independence, expertise,

---

[6] *Id.* at 168.
[7] The District Court had jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 80a-35(b)(5). We have jurisdiction under 28 U.S.C. § 1291.
[8] *Jones,* 559 U.S. at 340.
[9] 694 F.2d 923 (2d Cir. 1982).
[10] *Jones,* 559 U.S. at 346.
[11] *Id.* at 347.

care, and conscientiousness of the board in evaluating adviser compensation.[12]

In its opinion, the District Court concluded that none of the six *Gartenberg* factors favored the Petitioners and thus they had not met their burden of proof on their § 36(b) claim. We will affirm.

We need only briefly address each of the *Gartenberg* factors at issue on appeal[13] because the Petitioners' arguments boil down to assertions that we should overturn the District Court's factual findings and credibility determinations, which we will not do. "On appeal from a bench trial, our court reviews a district court's findings of fact for clear error and its conclusions of law *de novo.*"[14] "A finding of fact is clearly erroneous when it is "completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data."[15] Additionally, "[t]o the extent that the District Court's conclusions rested on credibility determinations, our review is particularly deferential."[16]

Here, the Petitioners first challenge the District Court's analysis of "the independence, expertise, care, and conscientiousness of the board in evaluating adviser compensation." Specifically, they argue that Joenk's dual roles as President and CEO as well as Chairman of the Board compromised the Board. The District Court, however,

---

[12] *Id.* at 344, 345 & n.5.
[13] Only five of the factors are before us—the Petitioners do not challenge the District Court's economies of scale analysis. Petitioner's Brf. at 56.
[14] *VICI Racing, LLC v. T-Mobile USA, Inc.,* 763 F.3d 273, 282–83 (3d Cir. 2014).
[15] *Id.* at 283 (internal quotations and citations omitted).
[16] *Id.* (internal quotations omitted).

found that the Board was "sufficiently diverse and independent" and that it "robustly reviewed FMG's compensation."[17]   Regarding Joenk's role as Chairman, the Court explained that Joenk is the only interested (i.e., non-independent) member of the Board and credited Schpero's testimony that the independent trustees "run [the] Board" even though Joenk provides the Board with information.  The Court specifically found that "Schpero's credible testimony adequately addresses any potential conflict posed by Joenk serving as both Chairman of the Board and CEO of FMG."[18]  On appeal, the Petitioners do not provide us with any reason to doubt Schpero's credibility or to conclude that the District Court's findings with respect to the Board were clearly erroneous.

Regarding the "nature and quality of the services provided" by FMG to the Funds, the District Court determined, based on testimony at trial, that FMG performed significant tasks for the Funds even after it delegated some of its responsibilities to its sub-administrator and sub-advisers.  The District Court also concluded, based on testimony from one of the Defendants' experts, that the Funds at issue performed well.[19]  Now the Petitioners argue that some of the services that the District Court discussed were not performed for the Funds relevant to this appeal, and they attempt to make factual arguments regarding the performance of the Funds that they also presented at trial.  As above, the Petitioners do not demonstrate that the District Court's findings were clearly erroneous, especially given the particular deference we must give to factual findings that are based on

---

[17] J.A. at 56.

[18] *Id.* at 42.

[19] The mutual funds at issue here are index funds, which means that their performance is intended to track a publicly available index, such as the S&P 500 Index.

credibility determinations. Listing a few services that may not be relevant to the Funds at issue is not enough for us to overturn a factual finding—in fact, the District Court listed many, varied services that FMG performs for the Funds that go well beyond the few tasks with which the Petitioners have taken issue.

Similarly, we conclude that the District Court's findings regarding fall-out benefits were not clearly erroneous. The Petitioners specifically argue that the District Court should have considered the so-called "product wrapper fees" to be fall-out benefits. However, it concluded that the Petitioners failed to meet their burden of proof that product wrapper fees should be considered fall-out benefits because "[t]here was no credible testimony defining and explaining product wrapper fees in order for the Court to determine what wrapper fees are."[20] Although the Petitioners attempt to relitigate the testimony that was presented at trial, they do not offer any persuasive reason for us to conclude that the District Court's factual findings were "completely devoid of minimum evidentiary support displaying some hue of credibility."

Regarding the issue of comparative fees, the District Court concluded that the Petitioners had not met their burden of proof because it found that, "in light of the inconsistent testimony" of the Petitioners' experts and the "credible testimony" of the Defendants' expert, "the Board compared the fees on each Fund against reliable sources, and determined they were reasonable in the industry."[21] On appeal, the Petitioners recite one of their expert's qualifications to argue that the District Court should have credited

---

[20] J.A. at 127.
[21] *Id.* at 134.

their expert's testimony. They also argue that the District Court ignored problems with the fee data it considered. Such arguments are unavailing. The District Court in fact addressed the concerns the Petitioners raise with respect to the fee data,[22] and the Petitioners have not presented any information that would cause us to question its credibility determinations, which were based not on the qualifications of the Petitioners' experts, but rather on their "inconsistent" testimony.[23] Accordingly, we do not conclude that the District Court's findings regarding comparative fees were clearly erroneous.

Finally, in terms of FMG's profitability, the Petitioners argue that FMG used improper accounting methods. The District Court, however, concluded that the Petitioners had failed to meet their burden of proof because their expert was not credible and because it found that FMG's practices were consistent with "ordinary accounting principles."[24] As above, the Petitioners do not put forth any arguments that persuade us that the District Court's findings of fact or credibility determinations should be overturned.

Overall, the District Court wrote a thorough and comprehensive opinion that the Petitioners have failed to undermine. Because we do not conclude that the District Court's findings of fact regarding any of the *Gartenberg* factors were clearly erroneous, we will affirm its conclusion that the Petitioners did not meet their burden of proof on their § 36(b) claim.[25]

---

[22] *Id.*

[23] *Id.* at 133-34.

[24] *Id.* at 103.

[25] Because we will affirm the District Court, we need not address the issue of damages because it is irrelevant.

## II.

For the foregoing reasons, we will affirm the District Court's dismissal of the Petitioners' § 36(b) claim.